UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARK LAVER,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>    **Defendant.** | Civ. No. 19-8072 (KM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Mark Laver, seeks review pursuant to 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability benefits under Title II and Title XVI of the Social Security Act based on degenerative disk disease and an amputated thumb on his right hand. For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I.   BACKGROUND[1]

**Procedural History**

This is Mr. Laver's second appeal to a United States District Court. He initially filed an application for benefits on March 6, 2012, alleging disability as of that date. (R. 185–90.) His application was denied, and he had a hearing before Administrative Law Judge Patrick Kilgannon ("ALJ Kilgannon") on June 27, 2013 (R. 28–45.) ALJ Kilgannon denied disability *via* a decision on July 26,

---

[1] Citations to the record are abbreviated as follows:

"DE _" = Docket entry in this case

"R. _" = Administrative Record (DE 9) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 5 attachments)

"Pl. Br." = Mr. Laver's Brief (DE 13)

"Gov. Br." = Commissioner's Brief (DE 16)

2013, concluding that Mr. Laver had the residual functional capacity ("RFC") to perform light work pursuant to step five of 42 U.S.C. § 405(g)'s sequential evaluation. (R. 14–27.) Mr. Laver exhausted his appeals within the Social Security Administration and ultimately appealed to the United States District Court for the District of New Jersey. (R. 432–34, 436–441.)

The Hon. Stanley R. Chesler vacated ALJ Kilgannon's decision and remanded back to the Commissioner on the ground that the ALJ's finding that Mr. Laver maintained the RFC for light work was not supported by substantial evidence. (R. 436–441.) The Social Security Appeals Council issued a remand order "vacat[ing] the decision of the Commissioner of Social Security and remand[ing] this case to an administrative law judge for further proceedings consistent with the order of the Court." (R. 44.) The remand order further noted that Mr. Laver had filed a subsequent claim for Title XVI disability benefits on August 25, 2015, which had been approved. A New Jersey state agency found he was disabled as of April 4, 2015 but could receive payments only as of his subsequent application date, August 25, 2015. (R. 444.) It consequently concluded that, on remand, the ALJ was to consider only benefits for the period prior to August 25, 2015. (*Id.*)

That brings us to the decision which Mr. Laver currently appeals. On remand, a hearing took place before Administrative Law Judge Hilton Miller ("ALJ Miller") on June 12, 2018. (R. 362–407.) ALJ Miller issued a decision on November 13, 2018, again denying disability at the fifth step of the sequential evaluation, once again finding that Mr. Laver maintained an RFC for light work in the claimed period of disability. (R. 343–61.) Mr. Laver again proceeded through the Social Security administrative process and brought a complaint in federal court on March 7, 2019. (DE 1.)

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520,

416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

      For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### B. The ALJ's Decision

The ALJ applied the five-step framework.

At step one, the ALJ found that Mr. Laver had not performed substantial gainful activity since the application date of March 6, 2012. (R. 347.)

At step two, the ALJ found that Mr. Laver had the following severe impairments: degenerative disc disease and a history of right thumb amputation. (*Id.*) Mr. Laver also asserted that he had hypertension, but the ALJ concluded there was insufficient evidence in the record to find that the hypertension was severe. (*Id.*)

At step three, the ALJ found that Mr. Laver's impairments did not meet any listings. (R. 348.) He rejected Mr. Laver's assertion that he met Listing 1.04, Disorders of the Spine, concluding that Mr. Laver's MRIs did not reveal the presence of pseudoclaudication, which the ALJ concluded Mr. Laver was required to prove via medical imaging in order to meet the Listing. (R. 348–49.) The ALJ also rejected Mr. Laver's assertion that the amputation of the tip of his thumb met Listing 1.05, Amputations, concluding that to meet that listing a plaintiff must demonstrate that both of his or her hands amputated, one or both of his or her lower extremities beneath the tarsal amputated, one hand and one lower extremity, or a hip disarticulation. The amputation of the tip of a thumb, he found, did not meet any of those criteria. (R. 349.)

At step four, the ALJ concluded that Mr. Laver has the residual functional capacity to perform light work, carry ten-to-twenty pounds, stand and walk with normal breaks for six hours in an eight-hour workday, sit with normal breaks for a total of six hours in an eight-hour workday, and occasionally climb ramps and stairs. (R. 349.) Mr. Laver complained of significant and constant pain which interfered with his sleep and daily life, but the ALJ was unconvinced that Mr. Laver's statements regarding the intensity of

his pain and limitations were consistent with the evidence, and believed that conservative treatment would be capable of assuaging his pain. (R. 350.) The ALJ noted there was no evidence suggesting that Mr. Laver's thumb amputation limited him in any way, and concluded that his disc degeneration could be managed with, *inter alia*, painkillers, braces, and steroid injections. (R. 351–53.)

At step five, the ALJ concluded that Mr. Laver could not resume his past position as a construction worker because he had only the residual functional capacity for light work. (R. 353.) Based on testimony by Roxanne Benoit, a vocational expert, however, the ALJ concluded that Mr. Laver could serve as a Cafeteria Attendant, Cleaner/Housekeeper, or Folder, of which there are hundreds of thousands of jobs positions available nationally. (R. 346, 354.)

## III. DISCUSSION

Mr. Laver asserts that the ALJ: (1) conducted the hearing in a manner "highly suggestive of the appearance of ALJ bias against plaintiff's counsel," and (2) failed to base his residual functional capacity analysis on substantial evidence.

### A. Mr. Laver's Assertions of ALJ Bias

I reject Mr. Laver's assertion of ALJ bias. Though I may reverse an adverse decision based upon proof of such bias, *Ventura v. Shalala*, 55 F.3d 900, 901–02 (3d Cir. 1995), such allegations must first be raised "at the administrative level and [are] waived if not brought up below," *Ward v. Shalala*, 898 F. Supp. 261, 269 (D. Del. 1995) (citing *Hummel v. Hecker*, 736 F.3d F.2d 91, 94 (3d Cir. 1984)); *see also Davis v. Comm'r of Soc. Sec.*, 2016 WL 356075 at *4 (D.N.J. Jan. 28, 2016) ("Because Claimant raised the bias challenge for the first time before this Court, she is deemed to have waived her bias claim."). Mr. Laver did not assert bias at the administrative level at any time, but rather raises these allegations for the first time now before me. The allegations are

5

therefore waived.[2] They are also meritless, as they are based upon, *inter alia*, the ALJ's innocuous misstatement of the procedural history of the case, accidentally addressing Mr. Laver's attorney by the name of his law partner in the decision denying benefits, and his statement during the hearing that he could, but ultimately did not, reopen a 2015 decision granting benefits in Mr. Laver's favor. (*See generally* Pl.'s Br.) Even if Mr. Laver's argument had been preserved at the agency level, such behavior would not constitute evidence of bias.

### B. Whether the ALJ's Residual Functional Capacity Determination Was Supported by Substantial Evidence

Mr. Laver asserts that the ALJ's determination that Mr. Laver had a light work RFC lacked substantial evidence and failed to comply with Judge Chesler's remand order, which invalidated a previous light work RFC. (Pl.'s Br. at 40.)

Judge Chesler rejected ALJ Kilgannon's 2013 decision on the ground that it insufficiently supported its conclusion that Mr. Laver had a light work RFC; he made no findings regarding the substance of Mr. Laver's application. (R. 438.) The Judge considered ALJ Kilgannon's decision and noted that while the ALJ stated that he gave significant weight to the opinion of Dr. Hoffman, who physically examined the plaintiff, and to medical professionals at the University of Medicine and Dentistry of New Jersey ("UMDNJ"), the ALJ never cited to any particular evidence from those sources which would have provided substantial support for an RFC determination. (R. 438–41.) I thus conclude that Judge Chesler made no substantive findings which would require ALJ Miller to come to any particular findings on remand. Rather, he directed that

---

[2] This should come as no surprise to Mr. Laver's counsel, who has often raised unsupported allegations of ALJ bias, *see e.g. Cruz v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 475, 483 (3d Cir. 2007); *Orriols v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 219, 225 n.4 (3d Cir. 2007), and whose law partner has had allegations of biased rejected on the very grounds I invoke in this opinion, *Davis*, 2016 WL 356075 at *4 (rejecting allegations of bias levied by Mr. Alter's law partner for failure to raise at ALJ level).

the ALJ should, as he must in any case, state the substantial-evidence basis for his findings.

Here, ALJ Miller remedied the deficiency that Judge Chelser found in ALJ Kilgannon's decision. ALJ Miller engaged in a lengthy and explicit analysis of Mr. Laver's RFC, and concluded that a light work RFC was appropriate based on substantial evidence, which he cited in detail. ALJ Miller noted that Mr. Laver alleges pain in his neck, head, back, shoulder, limbs and extremities, including burning, tingling, numbness, dizziness, muscle spasms, and migraines. (R. 349.) The ALJ further noted that Mr. Laver claims herniated discs and muscle spasms which obstruct his ability to walk, stand, bend over, sleep continuously through the night, fulfill activities in his daily life, and look after his own hygiene. (R. 350.) Lastly, he noted Mr. Laver's complaints that cooking, cleaning, and engaging in house and yardwork took exponentially longer due to his pain. (*Id.*) The ALJ, after noting all of these allegations, concluded that Mr. Laver's impairments could cause these symptoms. (*Id.*) He nevertheless found that Mr. Laver's statements regarding the intensity, persistence, and limiting effects of the symptoms were inconsistent with the evidence in the record. (*Id.*)[3]

For example, the ALJ noted that doctors at UMDNJ, as well as Dr. Christopher M. Boni and Dr. Anthony N. Sifonios, all examined the plaintiff and, while confirming that he had back ailments, all concluded that the proper treatment included conservative modalities such as back and neck braces, steroid injections, and prescription medication such as painkillers. (R. 350–51.) Dr. Alexander Hoffman, who performed Mr. Laver's consultative examination, as well as Drs. Ronald Bagner and Stephen Toder, who performed subsequent consultative examinations, concluded that Mr. Laver had only minimal or mild

---

[3] Mr. Laver argues that the partial amputation of this thumb would rule out frequent fine and gross manipulation, (Pl.'s Br. at 34), but, as the ALJ noted, Dr. Cornejo found that he had no limitation as to handling fine and small sized objects. (R. 350, 353.) That opinion provides substantial evidence in support of the ALJ's conclusion that Mr. Laver's limitations did "not impede the use of [his] fingers." (R. 353.)

7

degenerative changes, normal ambulation, no evidence of any neurologic deficit, and mild lumbar and cervical radiculopathy. (R. 351–52.)

The ALJ noted the opinions of Dr. Juan Cornejo and Dr. Minh Vu, who opined on Mr. Laver's ability to work. (R. 352.) Dr. Cornejo concluded that Mr. Laver had cervical and lumbar degenerative disc disease, but opined that he would nevertheless be capable of standing, walking, and sitting for reasonable amounts of time with breaks, and opined that he had no significant limitations as to balance and no limitations at all in handling fine and small-sized objections. (*Id.*) He ultimately concluded that Mr. Laver would be capable of performing sedentary activity with needed breaks. (*Id.*) Dr. Vu, an expert of internal and pulmonary diseases, testified at Mr. Laver's hearing and concluded that his degenerative disc disease was insufficiently severe to meet a listing and that he could perform light work. (*Id.*)

Lastly, the ALJ relied on the opinions of New Jersey Division of Disability Services medical experts Drs. Mark Jacknin and Mary Ann Nicastro, who opined that the medical evidence indicated that Mr. Laver was capable of performing light work and was not disabled. (*Id.*)

ALJ Miller, giving significant weight to the consultative examiners and the DDS reviewers, concluded that Mr. Laver had severe impairments of his back, but that those impairments were adequately treated by conservative modalities and did not prevent Mr. Laver from working. (*Id.*) He concluded Mr. Laver therefore retained the residual functional capacity to engage in light work. (R. 353.) The ALJ's decision thoroughly set forth the basis for the outcome and was based on substantial evidence in the record, including the opinions of numerous doctors set forth above.

Mr. Laver asserts that ALJ Miller overweighted the opinions of the DDS experts and Dr. Vu. He asserts that the DDS evaluations were outdated, and that Dr. Vu is not an expert in orthopedics. Whatever the validity of those points, it was for ALJ Miller, and is not for me, to weigh the evidence. My role is to confirm that ALJ Miller did perform that function, and that he cited

substantial evidence in support of his opinion. He plainly did: In addition to the DDS experts and Dr. Vu, ALJ Miller relied on numerous examining physicians who all concluded that Mr. Laver's limitations were relatively mild and could be remediated with conservative treatment. ALJ Miller also explicitly relied on Dr. Cornejo's 2018 consultative examination, not discussed by the plaintiff, which concluded that Mr. Laver was capable of walking, standing and sitting with reasonable breaks and thus able to perform sedentary work. (R. 352.) Unlike Dr. Vu, Dr. Cornejo is an orthopedist. (R. 352.) I thus find that ALJ Miller's conclusions were based on substantial evidence, and affirm.

## IV.   CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. A separate order will issue.

Dated: December 22, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**